UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHANNON LOVETT,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

CASE NO. C06-724-JCC-MJB

REPORT AND RECOMMENDATION

Plaintiff Shannon Lovett appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on November 23, 1994, alleging disability since June 1, 1992, and identifying her impairments as post traumatic stress disorder ("PTSD") and depression as a result of being raped in 1988.

---

[1] Defendant substituted pursuant to F.R.C.P. 25(d)(1) and 42 U.S.C. § 405(g). Michael J. Astrue became Commissioner of Social Security on February 12, 2007.

(Tr. 63-66, 92). The Social Security Administration denied Plaintiff's application initially (Tr. 72) and upon reconsideration (Tr. 84-86). A hearing was held before Administrative Law Judge ("ALJ") Verrell Dethloff on July 15, 1996. (Tr. 10-23, 40-62). Plaintiff, who was represented by counsel, testified at the hearing. (Tr. 43-61). The ALJ issued an unfavorable decision on December 24, 1996, finding that Plaintiff was able to perform a significant number of jobs in the state and national economies despite her limitations, and thus, she was not under a disability at any time through the date of the decision. (Tr. 22-23). On June 5, 1998, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-4). Plaintiff appealed to the District Court, where a stipulation to remand to the Agency for further proceedings was entered on April 12, 1999. (Tr. 398-401).

On remand, a hearing was held before ALJ Ruperta Alexis on October 15, 1999. (Tr. 552-58). Plaintiff, who was represented by counsel, testified at the hearing. (Tr. 552). Dr. Freed, the Plaintiff's treating psychiatrist, testified at trial, and a vocational expert ("VE") also testified. (Tr. 552). On March 15, 2000, the ALJ issued an unfavorable decision, finding that the Plaintiff was able to perform a significant number of jobs in the state and national economies despite her limitations, and thus, was not under a disability at any time through the date of the decision. (Tr. 557-58). Plaintiff requested administrative review (Tr. 563), and the Appeals Council remanded the matter for further proceedings because a transcript of the October 1999 hearing could not be generated. (Tr. 565).

A third hearing was held on October 8, 2003, before ALJ Edward Nichols. (Tr. 620-59). Plaintiff, who appeared with counsel, testified (624-51), as did a VE, Robert

Aslan. (Tr. 650-59). The ALJ issued an unfavorable decision on February 27, 2004, finding that Plaintiff was able to perform a significant number of jobs in the state and national economies despite her limitations, and thus, she was not under a disability at any time through the date of the decision. (Tr. 393-95). Plaintiff requested administrative review, but the Appeals Council declined, making this the final decision of the Commissioner for purposes of judicial review. (Tr. 3-4). Plaintiff timely filed her appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision and either remand for payment of benefits or remand for further administrative proceedings. Plaintiff argues that the ALJ erred by: 1) improperly rejecting the opinion of her treating psychiatrist; 2) improperly relying on the VE's testimony that Plaintiff could perform semi-skilled work as a file clerk; and 3) improperly rejecting Plaintiff's credibility.[2] Defendant responds that the Commissioner's decision should be affirmed because the ALJ applied correct legal standards and supported his decision with substantial evidence.

## III.  STANDARD OF REVIEW

The Court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence is defined as more than a mere scintilla but less than a

---

[2]Plaintiff has alleged five errors. Plaintiff's allegations regarding Dr. Freed's October 2003 opinion have been addressed in the first issue. Plaintiff's allegations regarding the burden of proof is not separately addressed because Plaintiff acknowledges that she has the burden of proving that she has been disabled since her insured status expired. (Dkt. #10 at 7).

REPORT AND RECOMMENDATION
Page - 3

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV. EVALUATING DISABILITY

A claimant must establish that the current disability began on or prior to the date last insured. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. *Id.* at § (e). If the claimant is not able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience. *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled.

## V.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was 40 years old at the time of the hearing before the ALJ. (Tr. 63, 387). She has obtained a Bachelor of Arts degree in Communication and in Theater (Tr. 96, 213, 387), and she previously worked as a retail salesperson, manager trainee, and manager. (Tr. 100-02). Plaintiff last worked in June 1992. (Tr. 92). Plaintiff has been diagnosed with depression and PTSD, which resulted from her being sexually assaulted at work. (Tr. 134, 151, 155, 394). Other evidence relevant to Plaintiff's claims is incorporated into the discussion below.

## VI.  THE ALJ'S DECISION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 394). He determined that Plaintiff has the following severe impairments: PTSD and depression. (Tr. 394). The ALJ found that these impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P of the Regulations. (Tr. 394).

The ALJ determined that Plaintiff can perform work in a safe environment, with no travel alone, and with very limited pubic or co-worker contact and little chance of confrontation. (Tr. 394). Thus, she concluded that Plaintiff is unable to perform her past relevant work. (Tr. 394). In reaching this conclusion, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 394).

At step five, the ALJ determined that Plaintiff has no exertional limitations, and she retains the capacity to adjust to work that exists in significant numbers in the national economy, including file clerk, light unskilled assembly worker, and medium unskilled hand packaging worker. (Tr. 394). Therefore, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision and is not eligible for DIB. (Tr. 394-95).

## VII.  DISCUSSION

### A. ALJ's Assessment of Treating Psychiatrist's Opinion

Plaintiff argues that the ALJ improperly rejected her treating psychiatrist Dr. Freed's retrospective opinion from October 2003. The Commissioner contends that the ALJ properly evaluated the opinion of Dr. Freed.

Greater weight is given to the treating physician's opinion; however, that opinion is not necessarily conclusive of a physical condition or on the ultimate issue of disability. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Id.; see also Andrews v. Shalala*, 53

REPORT AND RECOMMENDATION
Page - 6

1  F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).
2  In this case, the ALJ must provide clear and convincing reasons for rejecting Dr. Freed's
3  uncontradicted opinion.

4        Dr. Freed began providing psychiatric treatment to Plaintiff in 1988.  (Tr. 611).
5  She diagnosed Plaintiff as having PTSD and major depression.  (Tr. 611).  Dr. Freed's
6  treatment notes from before Plaintiff's date last insured indicated that Plaintiff's
7  prognosis was good and never stated that Plaintiff could not work.  (Tr. 133, 134, 139,
8  140, 144).  In addition, Dr. Freed encouraged Plaintiff to consider several jobs, such as
9  drug counselor, but she later suggested a home-based job.  (Tr. 195-202, 256, 391).  In
10 fact, Dr. Freed's notes stated that the Plaintiff had earned excellent grades in school and
11 was able to focus and concentrate on school assignments.  (Tr. 159, 162, 273).

12       In her October 2003 opinion, which is at issue here, Dr.  Freed stated that the
13 Plaintiff cannot deal with the stress of a normal work environment, the stress placed on
14 her by deadlines, and the stress placed on her by dealing with co-workers and
15 supervisors.  (Tr. 614).  Acknowledging that Dr. Freed was Plaintiff's treating physician,
16 the ALJ indicated that he was giving her October 2003 opinion "little value" because: 1)
17 Dr. Freed's conclusions in her 2003 interrogatories are not supported by her earlier
18 notes; and 2) Dr. Freed encouraged the Plaintiff to attend school and work, noted
19 Plaintiff's successes, and even signed off on a couple of jobs.  (Tr. 391, 393).

20       Plaintiff first argues that it was an error of law for the ALJ to reject Dr. Freed's
21 opinion because it was obtained for litigation.  Indeed, in the absence of other evidence
22 to undermining the credibility of such a medical report, litigation is not a legitimate basis
23 for rejecting it.  *Reddick  v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998); *see also Lester v.*
24 *Chater*, 81 F.3d 821, 832 (9th Cir. 1996).  Other reasons must be given which explain

giving less weight to the opinion.

The ALJ stated that Dr. Freed's notes on Plaintiff's progress do not support the extreme limitations identified in Dr. Freed's 2003 interrogatories. (Tr. 391, 393). When evaluating conflicting medical opinions, internal contradictions between a physician's opinion, that doctor's notes, and observations provide clear and convincing reasons for not relying on that doctor's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). This court's review of the record shows that the ALJ accurately described Dr. Freed's opinions as inconsistent. During the relevant period, Dr. Freed's notes indicate that Plaintiff's performance in school was excellent, Plaintiff was able to focus and concentrate on her school assignments, Dr. Freed was hopeful that Plaintiff could return to alternative full-time employment, and Dr. Freed actually agreed that Plaintiff could work. (Tr. 159-62, 256-58). These notes stand in stark contrast with Dr. Freed's October 2003 interrogatories which state that Plaintiff cannot deal with the stress of a normal work environment and has problems concentrating. (Tr. 614-15). Accordingly, the ALJ's determination is supported by substantial evidence in the record.

The ALJ also stated that Dr. Freed "was far too general in her opinion, running a lot together based on the current situations. " (Tr. 393). When evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ articulated the following reasons for not accepting certain limitations on Plaintiff's functioning that Dr. Freed identified in the 2003 interrogatories:

> Dr. Freed . . . ignored the fact that during the relevant period the claimant married, flirted with recreational chemicals, had a child with problems (hydrocephalus) and attended a couple of schools with good results. Consequently, I do not accept a total inability to accept supervisor

REPORT AND RECOMMENDATION
Page - 8

> criticism. Indeed, the claimant not only continued working for four years, but also went through school for years after her cessation of work with no difficulty, in which presumably professors and/or students challenged her work. I also see absolutely no support for "marked" difficulties in concentration, including Dr. Freed's interrogatories, and this is belied by the claimant's excellent school work. Counsel further mentioned Dr. Freed's opinion that the claimant has a "marked" inability to tolerate workplace pressures; but again, the claimant's activities during the relevant period belie this contention.

(Tr 393) (internal citations omitted). Careful review of Dr. Freed's October 2003 interrogatories reveals that the ALJ's determination that they were general and conclusory . (Tr. 615).

Plaintiff also argues that the ALJ misinterpreted *Moore v. Comm'r of Social Serv.,* 278 F.3d 920 (9th Cir. 2002). The ALJ stated that the expert testimony generated by Dr. Freed subsequent to Lovett's date last insured is of little relevance, citing to *Moore*). However, the record reflects that the ALJ mentioned *Moore* in a footnote, and he acknowledged that *Moore* was not specifically on point. (Tr. 393). Thus, the ALJ's reference to *Moore* was plainly not a primary reasons he rejected Dr. Freed's 2003 interrogatories. Further, it is appropriate for an ALJ to reject a contradicted retrospective diagnosis in light of evidence that is contemporaneous with the period in question. *See Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989). This claim of error fails.

**B.     File Clerk Position**

Plaintiff argues that she is unable to perform work as a file clerk because she does not have transferable skills. The Commissioner concedes that the ALJ erred in determining that transferable skills were not an issue in the case of the filing clerk position. However, the Commissioner asserts that the ALJ also identified two other positions, assembler (14,902 positions in the local region) and hand packager (24,045 positions in the local region), each of which exists in significant numbers in the national

REPORT AND RECOMMENDATION
Page - 9

economy. (Tr. 394, 652-53).

While this Circuit has never clearly defined the minimum jobs necessary to constitute a "significant number," it has found that as few as 1,000 jobs in the local area constitutes a significant number. *See Meanel v. Apfel,* 172 F.3d 1111, 1115 (9th Cir. 1999) (stating that 1,000-1,500 jobs in the local area was a significant number); *see also Barker v. Sec'y of Health and Human Servs.*, 882 F.2d 1474, 1479 (9th Cir. 1989) (stating that 1,266 jobs in the Los Angeles/Orange County area constituted a significant number); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (stating that 3,750-4,250 jobs was a significant number). Here, the two additional positions that the ALJ found Plaintiff capable of performing have 38,947 positions in the local region, which exceeds the number of jobs deemed significant in *Meanel*, *Barker*, and *Martinez*. Thus, the ALJ met his burden of production at step five because the positions of assembler and hand packager exist in significant numbers.

## C.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred when she stated that Plaintiff was a very credible witness but later concluded that her testimony regarding her limitations was not credible. If a claimant has established an underlying impairment which reasonably could be expected to produce the alleged substantive complaints and there is no evidence of maligning, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). General findings are insufficient, rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In assessing credibility, the ALJ may consider, for example: 1) ordinary techniques

of credibility evaluations, such as the claimant's reputation for lying and prior inconsistent statements concerning symptoms; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; 3) the claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective claims. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001). If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff argues that if the ALJ stated that Plaintiff was a credible witness in the body of her decision, she should have concluded that Plaintiff was disabled. Here, the ALJ points out that Plaintiff's allegations regarding her limitations are not totally credible because they are inconsistent with her active lifestyle. (*See* Tr. 391, 394). For example, the ALJ stated that during the relevant period Plaintiff cared for her child with hydrocephalus while attending school full-time. (Tr. 391, 394). Further, the ALJ noted that Plaintiff obtained excellent marks in her academic endeavors while caring for her child and her husband, regularly attended church, drove a car, went shopping, went to the movies, and took aerobics classes. (Tr. 391). Thus, the ALJ concluded that Plaintiff should be able to perform some low-level jobs provided by the VE. (Tr. 391). A plaintiff's ability to take care of her personal needs, prepare meals, do light housework, and shop for some groceries may be seen as inconsistent with the presence of a condition which would preclude all work activity.[3] *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th

---

[3] Additionally, despite Plaintiff's claim of not having the concentration to work 40 hours per week, she received excellent grades while attending school full-time *and* caring

REPORT AND RECOMMENDATION
Page - 11

Cir. 1990); *see also Burch v. Barnhart,* 400 F.3d 676, 680-81 (9th Cir. 2005). Although evidence of Plaintiff's daily activities may also allow an interpretation more favorable to her, the ALJ's interpretation was rational, and we must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *See Burch v. Barnhart,* 400 F.3d 676, 680-81 (9th Cir. 2005); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Accordingly, the ALJ has provided several clear and convincing examples of Plaintiff's active lifestyle that contradict her description of her limitations

Plaintiff next argues that the ALJ's credibility finding is unreviewable based *Peterson v. Chater*, 96 F.3d 1015 (7th Cir. 1996). In *Peterson*, the court reversed an ALJ's decision because it concluded that the ALJ had rendered conflicting findings that the Plaintiff could perform sedentary work, yet the Plaintiff was not capable of working in a job that required prolonged sitting, standing, and walking. *Id.* at 1016. In this case, however, no such conflict exists. Here the ALJ stated that he did not find Plaintiff's allegations regarding her limitations totally credible in his formal findings, and he explained his credibility determination in the body of the decision by describing the inconsistencies between Plaintiff's alleged limitations and her active lifestyle. This is not error and thus distinguishable from *Peterson*. (Tr. 391-94). Accordingly, the Court concludes that Plaintiff's claim of error is without legal support.

//

//

//

---

for a child with disabilities. (Emphasis added). (Tr. 631-34, 649).

REPORT AND RECOMMENDATION
Page - 12

## VIII.  CONCLUSION

The Commissioner's determination to deny Plaintiff Disability Insurance Benefits is free of legal error and supported by substantial evidence. Based on the record evidence, the undersigned recommends that the Commissioner's decision be AFFIRMED. A proposed Order accompanies this Report and Recommendation.

DATED this 16th day of February, 2007.

*/s/ M. J. Benton*

MONICA J. BENTON
United States Magistrate Judge